UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TROY I. WEBSTER,

          Plaintiff,

v.                                                      Case No. 20-cv-880-pp

SGT. LOEHRKE, OFFICER WORTHEN,
OFFICER BURMISTER, SGT. BALTZ
and OFFICER RICE,

          Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 6), DENYING PLAINTIFF'S MOTION FOR CONTEMPT (DKT. NO. 12), DENYING PLAINTIFF'S AMENDED MOTION FOR CONTEMPT (DKT. NO. 13) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Troy I. Webster, an inmate at Redgranite Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 6, his motion for contempt, dkt. no. 12, and his amended motion for contempt, dkt. no. 13, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 6)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When

1

funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On June 30, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $38.75. Dkt. No. 9. The court received that fee on July 27, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

　　A.　　Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff alleges that the defendants denied him necessary medical treatment for a serious medical injury. Dkt. No. at 1 at 2. He is suing, in their individual capacities, five defendants who work at Redgranite Correctional Institution: Officer Worthen, Officer Burmister, Sergeant Loehrke, Officer Rice, and Sergeant Baltz. Id. at 2-3.

The plaintiff alleges that he suffers from Multiple Sclerosis (MS), "a demyelinating disease marked by patches of hardened tissue in the brain or

3

spinal cord and associated with partial or complete paralysis and jerking muscle tremor." Id. at 4. He says that the adverse effects of MS are: numbness, weakness or paralysis in one or more limbs; brief pain, tingling or electric shock sensation; impaired vision with pain during movement in one eye; tremor, lack of coordination or unsteady gait; double vision or rapid, involuntary eye movement; fatigue; dizziness; and exacerbations and remissions of signs and symptoms. Id. at 5. The plaintiff alleges that when he arrived at Redgranite on July 2, 2018, medical staff instructed him to continue his MS therapy drug Copaxone. Id. at 6. He says that he is also prescribed Lryca for his MS. Id.

The plaintiff alleges that on December 1, 2019, while in the segregation unit at Redgranite, he experienced symptoms of numbness, weakness, dizziness and paralysis in his legs due to a flare-up of his MS. Id. at 6-7. He says that he fell and hit his head on the toilet, causing temporary unconsciousness. Id. at 7. The plaintiff states that at about 8:20 p.m., his cellmate pushed the cell's "medical emergency button" to alert staff of the plaintiff's medical emergency. Id. Defendant Worthen allegedly arrived at the plaintiff's cell, his cellmate told her that the plaintiff had a head injury, and Worthen observed him lying unresponsive on the floor. Id. The plaintiff states that Worthen told the plaintiff's cellmate that nursing staff was not on duty and that he would have to wait until morning to be seen, and she walked away. Id.

4

According to the plaintiff, his condition worsened and his cellmate continued to press the medical emergency button. Id. He says that at about 9:20 p.m., defendant Burmister responded over the intercom. Id. at 8. The plaintiff's cellmate allegedly explained the situation to Burmister and the plaintiff yelled, "I need help!" Id. The plaintiff states that Burmister responded, "talk to the Sgt. when he does his rounds." Id.

The plaintiff alleges that at about 9:45 p.m., defendant Loehrke arrived at his cell and asked what happened. Id. The plaintiff's cellmate allegedly explained that the plaintiff had hit his head, couldn't stand or walk, had MS and could hardly talk. Id. Loehrke allegedly asked the plaintiff what was going on and the plaintiff responded, "help me, headache, my head hurts, my legs are painful and tingling, I can't stand or walk and I can't feel my groin." Id. The plaintiff states that Loehrke told him, "HSU [Health Services Unit] is gone and no one is here," and that Loehrke asked him what was normally done when this happened and what the plaintiff wanted him to do. Id. The plaintiff says that he responded that he had bladder problems when it hurt like this and that he needed a doctor. Id. Loehrke allegedly told the plaintiff that he could "drop a blue slip" and that he could get help when HSU arrived in the morning. Id. at 9. The plaintiff allegedly responded, "I need help now, call someone!" Id. Loehrke allegedly told the plaintiff that if he had a blue slip, he would drop it in the box for the plaintiff. Id. The plaintiff says that he asked for a supervisor, but that Loehrke slammed the trap door and walked away. Id.

The plaintiff alleges that at about 10:20 p.m., defendant Rice was doing his rounds and his cellmate asked if anyone was coming to help the plaintiff. Id. Rice allegedly looked confused, showed no interest in the plaintiff's injuries and walked away from the cell door. Id. at 10.

The plaintiff alleges that at 10:50 p.m., defendant Baltz arrived at his cell door. Id. The plaintiff states that his cellmate told Baltz that the plaintiff had "MS or something," that he was really messed up and that no one did anything to help him on second shift. Id. The plaintiff allegedly told Baltz that he was hurt and needed help, and that his legs and groin tingled with severe pain. Id. He says he asked Baltz to call the "nurse, anyone; someone!" Id. Baltz allegedly responded that the plaintiff would have to wait for HSU to arrive. Id. at 11. The plaintiff says he asked to see a "White Shirt" or supervisor. Id. Baltz allegedly said he would look into it and he walked away. Id.

The plaintiff alleges that his cellmate made one last attempt to get help by pressing the emergency button. Id. He says that they were told that if they continued pressing the button, they would receive a conduct report. Id.

The plaintiff alleges that at about 6:15 a.m., an officer came by on medication pass and noticed that the plaintiff was lying down, unable to walk or stand to receive his medications. Id. The officer allegedly immediately notified a sergeant who came to the plaintiff's cell and, seeing that the plaintiff was in immediate need of medical assistance, told him that HSU was on the way. Id. The plaintiff states that at 6:45 a.m., ten hours after he initially complained to security staff that he was in a serious medical situation, nursing

6

staff saw him in the HSU. Id. He says that, starting at 9:50 a.m., "Nero/Concussion checks" were performed every thirty minutes. Id. at 12.

The plaintiff contends that the defendants deprived him of the medical care he needed for his injuries. Id. He seeks monetary damages. Id. at 13.

C. Analysis

To state a claim under the Eighth Amendment, the plaintiff must allege that he suffered from an objectively serious medical condition to which the defendants were deliberately indifferent. Farmer v. Brennan, 511 U.S. 825, 837, (1994); Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015). The plaintiff's allegations that due to symptoms from his MS condition, he fell, suffered a concussion and experienced severe pain satisfy the objective standard of an Eighth Amendment claim. See Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997). Likewise, the plaintiff's allegations that the defendants did not immediately help him but instead made him wait until the next morning, when he was lying on the floor in pain and unable to stand, satisfies the subjective standard. See Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008). The plaintiff may proceed on his claim that the defendants acted with deliberate indifference to his serious medical needs.

### III. Motion for Contempt (Dkt. No. 12) and Amended Motion for Contempt (Dkt. No. 13)

On July 30, 2020, the plaintiff filed a motion for contempt of court. Dkt. No. 12. He states that he submitted the motion to ensure that the defendants or their agents obey future court orders and adhere to deadlines. Id. at 1. The plaintiff believes that Redgranite staff members have impeded his right to

7

access the court by not submitting the initial partial filing fee to the court by the July 21, 2020 deadline. Id. at 2. The plaintiff's motion is dated July 27, 2020, and the court received the plaintiff's initial partial filing fee on the same day. It is not uncommon for there to be delays in the court receiving inmates' partial filing fees. There is no indication that Redgranite staff caused unreasonable delay in submitting the $38.75 initial partial filing fee. The court will deny the plaintiff's motion.

On August 28, 2020, the court received the plaintiff's amended motion for contempt. Dkt. No. 13. The plaintiff reiterates in this amended motion his allegations that the Redgranite staff tried to "derail" his lawsuit by failing to promptly submit the initial partial filing fee. The court suspects that the plaintiff amended his motion because he had not heard anything from the court and assumed that the court had not received the initial partial filing fee. The court's delay in screening the plaintiff's complaint was not the result of any inaction on the part of Redgranite staff. It was solely the result of the court's heavy docket. The court will deny the plaintiff's amended motion for contempt. Dkt. No. 13.

### IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 6.

The court **DENIES** the plaintiff's motion for contempt. Dkt. No. 12.

The court **DENIES** the plaintiff's amended motion for contempt. Dkt. No. 13.

8

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on the defendants. The court **ORDERS** the defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$222.05** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Nancy Joseph for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 29th day of October, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**